UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY JEAN T.,<br><br>                             Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>                             Defendant. | Case No.:  20cv1090-RBB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14]** |

On June 15, 2020, Plaintiff Kathy T.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits and supplemental security income [ECF No. 1].  On July 10, 2020, Plaintiff consented to have a United

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).

1

States Magistrate Judge conduct all proceedings in this case [ECF No. 6].[2]  Defendant filed the Administrative Record on November 24, 2020 [ECF No. 12].  On December 29, 2020, Plaintiff's Merits Brief, construed by the Court as a Motion for Summary Judgment, was filed [ECF No. 14].  Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment on March 22, 2021 [ECF No. 17].  Plaintiff's Reply in Support of Merits Brief was filed on April 5, 2021 [ECF No. 18].  The case was transferred to this Court on April 8, 2021 [ECF No. 20].

For the following reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.

## I.   BACKGROUND

Plaintiff Kathy T. was born in 1958 and completed one year of college.  (Admin. R. 320, 343, ECF No. 12.)[3]  She previously worked as a medical caretaker and sustained a work injury to her lower back on August 19, 2014, while lifting a patient into a wheelchair.  (Id. at 343, 509.)  On or about November 1, 2017, Kathy T. filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively.  (Id. at 320-32.)  She alleged that she had been disabled since September 19, 2014, due to severe arthritis in her neck, disk injury in her neck, eczema on her feet and hands, and carpal tunnel.  (Id. at 320, 342, 350.)  Plaintiff's applications were denied on initial review and again on reconsideration.  (Id. at 283-86, 290-95.)  An administrative hearing was conducted on April 3, 2019, by Administrative Law Judge ("ALJ") Louis M. Catanese; on May 9, 2019, he issued a decision finding Plaintiff not disabled.  (Id. at 17-29.)  Plaintiff requested a review of the

---

[2] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.

[3] The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court cites to the page numbers affixed by CM/ECF.

ALJ's decision; the Appeals Council denied the request on May 5, 2020. (Id. at 1-4.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

**A.     ALJ's Decision**

On May 9, 2019, the ALJ issued a decision finding that Kathy T. was not disabled. (Id. at 17-29.) Judge Catanese determined that Plaintiff had not engaged in substantial gainful activity since September 19, 2014, her alleged onset date. (Id. at 20.) He found that Plaintiff had severe impairments including degenerative disc disease of the cervical and lumbar spine, obesity, and hypertension. (Id.) He considered the following conditions as nonsevere impairments: bilateral carpal tunnel syndrome, venous insufficiency, thoracic spine degenerative disc disease, hyperlipidemia, knee condition, enlarged heart, exanthematous disorder, and eczema. (Id.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Id. at 21.) He stated that Kathy T. had the residual functional capacity to perform no greater than medium work, with additional specified limitations. (Id. at 21-22.) ALJ Catanese concluded that Plaintiff was capable of performing her past relevant work as a caregiver, and had not been under a disability from September 19, 2014, through the date of his decision. (Id. at 28-29.)

## II.     LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C.A. §§ 405(g), 421(d) (West 2011). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___ U.S. ___, ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).  The district court may affirm, modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

To qualify for disability benefits under the Social Security Act, a claimant must show two things:  (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011).  An applicant must meet both requirements to be classified as "disabled."  Id.  The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520.  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.

20 C.F.R. § 404.1520(b) (2019).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  Id. § 404.1520(d).  If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four.  Id. § 404.1520(e).  Fourth, the Commissioner determines whether the claimant can do his or her past relevant work.  If the claimant can do their past work, benefits are denied.  Id. § 404.1520(f).  If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Id. § 404.1520(g).  If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.  Id.

### III.  DISCUSSION

Plaintiff makes two arguments.  First, she contends that the case should be remanded for consideration of medical records submitted to the Appeals Council after the ALJ's decision.  (Pl.'s Br. 8, ECF No. 14.)  Second, she argues that ALJ Catanese failed to properly evaluate two of the medical opinions in the record.  (Id. at 9-11.)

**A.   Post-Decision Records**

At the administrative hearing held on April 3, 2019, Kathy T. testified that she used a cane to walk "all the time," including inside her home, because her "legs collapse because of the veins."  (Admin. R. 230-31, 232, ECF No. 12.)  In his May 9, 2019 decision, the ALJ recounted Plaintiff's testimony but found that the evidence in the record did not support that she regularly used a cane.  (Id. at 28.)  Judge Catanese noted

that Kathy T. was not described as using a cane or any assistive device at her medical appointments, and she did not have a cane with her when she attended her consultative examination in January 2018. (Id.) Plaintiff acknowledges that she did not need a cane prior to 2019 but contends that additional records submitted to the Appeals Council in conjunction with her request for review of the ALJ's decision supported her April 3, 2019 testimony that she required the use of a cane. (Pl.'s Reply 2-3, ECF No. 18; see also Admin. R. 2, 77-215, ECF No. 12.) She contends that the use of a cane precludes her from performing her past relevant work as a caregiver, and the case should be remanded to the ALJ for consideration of the supplemental records. (Pl.'s Br. 8, ECF No. 14, citing Admin. R. 145-46, 123, 151, ECF No. 12.) The Commissioner responds that the Appeals Council properly determined that these records did not pertain to the period at issue, that is, the time up to the ALJ's decision. (Def.'s Opp'n 24, ECF No. 17.) Defendant further contends that Plaintiff was not prescribed a cane, the record lacks evidence that she regularly required the use of a cane, and she can, as the Appeals Council indicated, file a new claim for disability benefits if she contends that she was disabled after May 9, 2019, the date of the ALJ's decision. (Id. at 24-25 & n.11; see also Admin. R. 2, ECF No. 12.)

  In Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157 (9th Cir. 2012), the Ninth Circuit held that the administrative record includes evidence submitted for the first time to the Appeals Council, and that such evidence is considered to be a part of the "record as a whole." (Id. at 1162-63.) In doing so, the circuit court observed that the Commissioner's regulations permit claimants to submit additional evidence to the Appeals Council and require that it consider the evidence so long as it relates to the period on or before the date of the ALJ's decision. (Id. at 1162 (citing 20 C.F.R. § 404.970(b)).) Here, the records submitted to the Appeals Council and upon which Plaintiff relies do not relate to the period before the ALJ's decision; at best, they demonstrate that Plaintiff's physical therapist prescribed the use of a cane on May 28,

1  2019, after the ALJ's decision.  (See Admin. R. 145, ECF No. 12 ("patient demonstrated
2  mild limping during gait with no cane[,] currently using borrowed cane[,] will order SPC
3  [single-point cane]".)  Therefore, there is no need to remand to the ALJ for consideration
4  of these records.  As set forth in the regulations, "If you submit additional evidence that
5  does not relate to the period on or before the date of the [ALJ] hearing decision . . . the
6  Appeals Council will  . . . advise[] you of your right to file a new application."  20 C.F.R.
7  § 404.970(b).
8       Plaintiff's testimony at the April 3, 2019 hearing that she regularly used a cane was
9  not, without medical documentation establishing a need for it and the circumstances
10 surrounding that need, sufficient to show that it was medically necessary.  See, e.g.,
11 Harry B. v. Comm'r Soc. Sec., 3:20-CV-227 (ATB), 2021 WL 1198283, at *8-9
12 (N.D.N.Y. Mar. 30, 2021) (citing cases).  The medical notes in the record indicated on
13 many occasions that Plaintiff's gait and station were normal.  (See, e.g., Admin. R. 449,
14 471, 668, 717, 1023, ECF No. 12.)  Plaintiff points to no evidence in the medical
15 documentation that during the period before the ALJ's decision she regularly used a cane
16 to ambulate or that a cane had been prescribed as medically necessary.  The Court
17 concludes that substantial evidence supports the ALJ's decision to not include the use of
18 an assistive device in Kathy T.'s residual functional capacity.

19 **B.     Evaluation of Medical Opinions**

20      Plaintiff takes issue with the ALJ's finding that the opinions of Thomas J.
21 Sabourin, M.D., a consultative examiner, had more persuasive value than those of Larry
22 D. Dodge, M.D., her treating physician.

23     **1.     Dr. Dodge's opinions**

24      Dr. Dodge, an orthopedic surgeon, managed Plaintiff's treatment in connection
25 with her worker's compensation claim relating to her August 19, 2014 work injury.
26 (Admin. R. 508-09, ECF No. 12.)  During the course of her treatment, he gave multiple

opinions regarding Plaintiff's limitations, (see 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2017) (defining "medical opinion" as a statement from a medical source as to a patient's functional abilities and limitations)), including three discussed by the ALJ.[4]  On January 30, 2015, the doctor found Kathy T. to be physically capable of working with a thirty-pound lifting limitation.  (Admin. R. 508, 511, ECF No. 12.)  Nine months later, on October 29, 2015, Dr. Dodge released Plaintiff to modified work duty, including "no repetitive climbing, bending, or twisting and no lifting greater than 25 pounds."  (Id. at 482-83.)  On June 30, 2016, the treating physician stated in a narrative report that his patient could work with a twenty-five-pound lifting limitation and avoidance of repetitive bending and stooping.  (Id. at 451, 454.)  That same day, Dr. Dodge completed a one-page report setting forth more restrictive limitations, including restrictions on prolonged sitting; prolonged standing and walking; repetitive climbing, bending, or twisting; and lifting more than ten pounds.  (Id. at 549.)

     The ALJ found "no significant persuasiveness" in Dr. Dodge's opinions regarding Plaintiff's limitations because he found the opinions were neither supported by the doctor's findings nor consistent with the overall evidence.  (Id. at 25.)  The ALJ reasoned that Dr. Dodge's reports of normal motor strength, intact sensation, no pathologic reflexes, negative straight-leg raising tests, and no evidence of a limp or antalgic gait were inconsistent with the extent of the functional limitations suggested by the doctor.  (Id. at 25-26.)  Judge Catanese also observed that although medical evidence in the record showed some abnormal findings, the overall evidence reflected primarily normal findings.  (Id. at 26.)

/ / /

---

[4] An ALJ may address multiple opinions from a single medical source in one analysis.  See 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).

### 2. Dr. Sabourin's opinions

The Plaintiff saw Dr. Sabourin for an orthopedic evaluation on January 8, 2018. (Id. at 1021.)  His diagnostic impression consisted of (1) history of degenerative arthritis, cervical spine; (2) mild congenital stenosis and degenerative changes of the lumbar spine, especially in the facets; and (3) history of carpal tunnel syndrome in the left wrist, with no objective findings.  (Id. at 1025.)  He assessed Kathy T.'s functional limitations as follows:  lifting or carrying of fifty pounds occasionally and twenty-five pounds frequently; standing and walking for six hours of an eight-hour workday; sitting for six hours of an eight-hour workday; push and pull limitations equivalent to the lift and carry limitations; climb, stoop, kneel, and crouch frequently; no manipulative limitations; and no need for assistive devices to ambulate.  (Id. at 1026.)

ALJ Catanese found Dr. Sabourin's opinions to have "greater persuasiveness" than other medical opinions in the record, including Dr. Dodge's.  (Id. at 26.)  He explained that Dr. Sabourin's opinions were supported by his objective findings and were more consistent with the overall evidence in the record.  (Id.)  The ALJ noted that Dr. Sabourin's examination findings, including normal gait and station, diminished cervical and lumbar range of motion, negative straight-leg raising test, full motor strength, intact sensation, and intact deep tendon reflexes, supported the doctor's opinions regarding Kathy T.'s functional limitations.  (Id. at 28, citing id. at 1023-35.)  Judge Catanese also determined that Dr. Sabourin's conclusions were consistent with "the generally unremarkable findings in the overall evidence[.]"  (Id. at 28.)

### 3. 2017 revised regulations

Plaintiff filed for disability after March 27, 2017.  Therefore, the Social Security Administration's 2017 revised regulations governing the consideration of medical opinions apply.  See 20 C.F.R. §§ 404.1520c, 416.920c (2017).  Under the updated regulations, an ALJ need "not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative finding(s)[5], including those from [a claimant's] medical sources." See 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ is to evaluate medical opinions and prior administrative medical findings by evaluating their "persuasiveness." Id. In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors: supportability, consistency, treatment or examining relationship, specialization, and "other factors." Id. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The supportability and consistency factors are "the most important factors." Id. §§ 404.1520c(b)(2); 416.920c(b)(2).[6]

**4.   Analysis**

Plaintiff makes several arguments contesting the ALJ's finding that Dr. Sabourin's opinions were more persuasive than Dr. Dodge's opinions. She first contends that the ALJ was required to articulate "specific and legitimate reasons" supported by substantial evidence to reject Dr. Dodge's opinions that Plaintiff was capable of engaging in more than light work but less than the full range of medium work. (Pl.'s Br. 9, ECF No. 14.)[7] The "treating source rule" in the prior version of the regulations allowed an ALJ to reject

---

[5] A "prior administrative medical finding" consists of a finding about a medical issue by a "Federal or State agency medical or psychological consultant[] at a prior level of review." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4).

[6] Under the prior regulations, an ALJ generally accorded controlling weight to a treating physician when the doctor utilized medically approved diagnostic techniques to support the offered opinion, and where the opinion was not inconsistent with other substantial evidence. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). Under the new regulations, a treating source is not entitled to the same presumption, particularly when another medical opinion is more consistent with or better supported by evidence in the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[7] Occupations are classified as sedentary, light, medium, heavy, and very heavy under the Social Security regulations. 20 C.F.R. §§ 404.1567, 416.967. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Id. §§ 404.1567(b), 416.967(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." Id. §§ 404.1567(c), 416.967(c).

a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017). This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853) (Jan. 18, 2017) (available at 2017 WL 168819) ("[W]e are not retaining the treating source rule . . . for claims filed on or after March 27, 2017."); see also Jones v. Saul, No. 2:19-cv-01273 AC, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to deference, and supersede prior Ninth Circuit case authority interpreting the treating physician rule); Allen T. v. Saul, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("[T]he Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'") (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981-82 (2005)).[8]  Therefore, Plaintiff's argument that the ALJ erred by failing to articulate specific and legitimate reasons supported by substantial evidence to reject Dr. Dodge's opinions is without merit.

Second, Plaintiff contends that Dr. Sabourin's opinions were not based on substantial evidence in the record because the doctor characterized Plaintiff's central canal stenosis as "mild" while the other medical evidence in the record considered it to be

---

[8] Other than superseding the treating physician rule, it is not yet clear how much the revised regulations impact other Ninth Circuit principles applicable to Social Security cases, as appeals of ALJ decisions applying the amended regulations are just starting to reach district courts. In the absence of Ninth Circuit authority interpreting the revised regulations, this Court joins other district courts in "concluding that longstanding general principles of judicial review—especially those rooted in the text of the Social Security Act—still apply to cases filed on or after March 27, 2017." See, e.g., Thompson v. Comm'r Soc. Sec., No. 2:20-CV-0003 KJN, 2021 WL 1118656, at *3 n.3 (E.D. Cal. Mar. 23, 2021).

"moderate." (Pl.'s Br. 10, ECF No. 14.) Lumbar spinal stenosis is the narrowing of the spaces within the spine which can put pressure on the nerves that travel through the spine. See Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited May 26, 2021). Some individuals may show evidence of spinal stenosis on an MRI or CT scan but may not have symptoms, while others may experience pain, numbness, tingling, or muscle weakness. Id. Kathy T.'s lumbar MRI showed "congenitally short pedicles with moderate central canal stenosis" and "facet arthropathy, with facet effusions" at L4-L5 and "mild facet arthroplasty" at L5-S1. (Admin. R. 485, ECF No. 12.)

      Drs. Dodge and Sabourin each acknowledged that the MRI was read as showing "moderate" central canal stenosis at L4-L5. (See id. at 452, 1025.) Dr. Dodge observed that Plaintiff's radicular symptoms had diminished following an epidural steroid injection, but she would "likely always experience" low back "soreness and tightness" because of her stenosis at L4-L5. (Id. at 483.) He opined that his patient's lumbar condition required a lifting limitation of twenty-five pounds (i.e., less than the requirement for medium work but more than required for light work). (Id. at 454, 483.)[9] Dr. Sabourin, on the other hand, determined that Plaintiff remained capable of performing work at a medium level (lifting up to fifty pounds occasionally and twenty-five pounds frequently) and considered her lumbar stenosis to be "mild" notwithstanding her MRI results. (See id. at 1025-26.) He explained, "[Kathy T.] comes in today with the severity and duration of her complaints in some disproportion to the determinable condition. Her lumbar spine has some changes one would expect at her age [fifty-nine], but nothing would seemingly cause compromise to the nerves and she had no

---

[9] Dr. Dodge's January 30, 2015 opinion that Plaintiff was limited to lifting thirty pounds was rendered prior the lumbar MRI, which was performed on February 14, 2015. (Admin. R. 485, ECF No. 12.)

neurological findings." (Id. at 1025.)  Dr. Sabourin acknowledged that on February 14, 2015, Dr. Burdeny performed an MRI on Kathy T.'s lumbar spine and Dr. Burdeny noted "moderate central canal stenosis" and facet arthropathy, "mild facet arthropathy at L5-S1," and "mild desiccation of the L5-S1 disk." (Id.)  Dr. Sabourin concluded that Plaintiff had "[m]ild congenital stenosis and degenerative changes of the lumbar spine, especially in the facets." (Id.)  Dr. Sabourin does not appear to have mistakenly read Plaintiff's MRI findings as "mild" rather than "moderate" or misstate the evidence in the record.  Rather, based on his clinical findings and medical evidence, including the MRI report, Dr. Sabourin reached differing opinions than Dr. Dodge regarding the severity of Plaintiff's lumbar stenosis and the functional limitations imposed by it.

The ALJ found that Dr. Sabourin's opinions had greater persuasiveness because they were supported by the doctor's objective findings and were more consistent with the overall evidence in the record.  (Id. at 26.)  He thus addressed the two key factors identified in the 2017 revised regulations.  See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (providing that supportability and consistency are the most important factors when evaluating medical opinion evidence).  Plaintiff exhibited some abnormal findings during her examination with Dr. Sabourin, including neck pain at the extremes of motion and with axial load testing, back pain with flexion, and diminished range of motion in both the cervical and lumbar spines.  (Admin. R. 1023, ECF No. 12.)  Yet, there was no evidence of spasm and her straight-leg raising and other tests were normal.  (Id.)  The doctor explained that Plaintiff's lumbar spine changes were expected for her age and that she had no neurological findings suggesting compromise to her nerves.  (Id. at 1025.)  Substantial evidence substantiates the ALJ's determination that Dr. Sabourin's opinions were supported by his objective findings.  See, e.g., McKenzie v. Comm'r Soc. Sec., No. 2:19-CV-0138-DMC, 2020 WL 916872, at *4 (E.D. Cal. Feb. 25, 2020) ("While the evidence . . . demonstrates that plaintiff was in fact diagnosed with spinal

stenosis, the record is also devoid of any statement which particularly confirms that plaintiff had some form of nerve root compromise."); see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be.").

      The ALJ also reasonably found that Dr. Sabourin's opinions were more consistent with the evidence from other sources. See id. at §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). As ALJ Catanese pointed out, Dr. Sabourin's opinions were more consistent with findings by other medical sources including Hung Vu, M.D., Evan Minkoff, D.O., Russell J. Trepanier, P.A., and Ebrahim Mohamedy, M.D. (Admin. R. 27, ECF No. 12, citing id. at 397, 668-71, 717, 1115, 1118.) During an emergency room visit on November 7, 2015, Dr. Vu's findings reflected that Kathy T.'s neurological examination was normal. (Id. at 397.) On December 1, 2014, Plaintiff's physical medicine and rehabilitation consultation with Dr. Minkoff revealed a normal neurologic examination, normal gait pattern, unrestricted lumbar range of motion, no evidence of radiating pain, and a negative straight-leg raising test. (Id. at 668-72.) Dr. Minkoff opined that Kathy T. did not require any specific work restrictions. (Id. at 672.) Similarly, on October 23, 2014, Physician Assistant Trepanier found that Plaintiff had normal gait and posture, no lower extremity or back weakness, and no restriction in the range of motion in her back. (Id. at 717.) These opinions from other medical sources reflect Kathy T.'s condition in 2014 and 2015. Dr. Sabourin assessed Plaintiff's condition more recently, on January 5, 2018. (Id. at 1021.) And Dr. Mohamedy, whose assessment of Kathy T. was the most recent, detected only non-focal findings during

neurological examinations on December 10, 2018, and January 10, 2019.  (Id. at 1115, 1118.)

Turning to the ALJ's consideration of Dr. Dodge's opinions from 2015 through March 29, 2017, Judge Catanese accurately summarized the physician's findings, including normal motor strength, intact sensation, no pathologic reflexes, negative straight-leg raising tests, and lack of evidence of a limp or antalgic gait.  (Id. at 25-26, citing id. at 470-71, 483.)  Dr. Dodge's observations that Plaintiff's lumbar symptoms were generally "slight to moderate" in nature, were controlled with occasional medications and home exercise, her "moderate" stenosis would result only in "soreness and tightness" in her low back, and a lumbar steroid injection had eliminated her radicular symptoms, support the ALJ's determination that Dr. Dodge's opinions and limitations for Kathy T. were not substantiated by his findings and had less persuasive value.  (See id. at 470, 473, 476, 482, 483; see also 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (explaining supportability factor).)  The ALJ also reasonably found that Dr. Dodge's opinions were not consistent with the findings of other medical sources in the record.  (See id. at 27 (citing the same findings by Drs. Vu, Minkoff, Hoang, and Mohamedy discussed above).)  The ALJ was entitled to consider the doctors' opinions, including their interpretation of the MRI findings, and to resolve conflicts in the medical evidence.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Trevizo, 871 F.3d 664, 674-75 (citing Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)).  The Court finds that the ALJ properly evaluated the conflicting medical opinions of Drs. Sabourin and Dodge, and ALJ Catanese's determination that Dr. Sabourin's opinion was more persuasive was supported by substantial evidence.

Finally, Kathy T. argues that the ALJ should have granted Dr. Dodge's opinions greater weight because he examined Plaintiff more frequently than Dr. Sabourin.  (Pl.'s

1. Br. 11, ECF No. 14 (citing 20 C.F.R. § 404.1520c(c)(3)(ii)).) She contends that the
2. frequency of examinations factor, with "all else being equal, weighs in favor of Dr.
3. Dodge." (Id.) Again, the 2017 amended regulations clearly provide that the
4. supportability and consistency factors are "the most important factors." 20 C.F.R. §§
5. 404.1520c(b)(2); 416.920c(b)(2). Even if the "consistency" factor can be interpreted to
6. include Dr. Dodge drawing similar conclusions at other times he treated the plaintiff, that
7. does not change the result. As discussed above, the ALJ could properly find Dr.
8. Sabourin's opinions were more persuasive than Dr. Dodge's on the basis that Dr.
9. Sabourin's opinions had greater support and were more consistent with the overall
10. evidence in the record. See id., §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Therefore,
11. as the Commissioner observes, the basis for Plaintiff's argument—that the physicians
12. "agree[d] on the findings" and their opinions had "equal" supportability and
13. consistency—is incorrect. (See Def.'s Opp'n 23 n.10, ECF No. 17.) Moreover, the
14. revised regulations do not require the ALJ to explicitly address the treatment relationship;
15. rather, he may discuss this factor if he finds it appropriate to do so. See 20 C.F.R. §§
16. 404.1520c(b)(2), 416.920c(b)(2) (emphasis added); see also id. §§ 404.1520c(b)(3),
17. 416.920c(b)(3) (requiring ALJ to articulate how he considered factors other than
18. supportability and consistency, including the treatment relationship, only when he finds
19. two or more medical opinions about the same issue equally well-supported and consistent
20. with the record). Plaintiff's argument does not meet this threshold. Therefore, this
21. argument fails.
22. / / /
23. / / /
24. / / /
25. / / /
26. / / /
27.
28.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **DENIED**.

This Order concludes the litigation in this matter.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  May 26, 2021

Hon. Ruben B. Brooks
United States Magistrate Judge